IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE GRANT, III,<br><br>          Petitioner,<br><br>   v.<br><br>GARY SWARTHOUT, Warden,<br><br>          Respondent. | Case No.: C 11-6690 YGR (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY** |

## INTRODUCTION

This matter is now before the Court for consideration of Petition for Writ of Habeas Corpus of Jesse Grant, III, ("Petitioner") under 28 U.S.C. § 2254 challenging his 2008 conviction in Santa Clara County Superior Court. For the reasons set forth below, the petition is DENIED. In addition, no certificate of appealability will be issued.

## BACKGROUND

**I.**   **Case History**

In March 2008, a jury in Santa Clara County Superior Court found petitioner guilty of eight counts of second-degree burglary, and found true allegations that he had four prior "strike" convictions and four prior prison terms. (Ans. Ex. 1 at 380-89, 438.) On July 14, 2008, the trial court sentenced him to a term of 232 years in state prison. (*Id.* at 680-82.) On

1 February 9, 2010, the California Court of Appeal affirmed the judgment. (Ans. Ex. 6.)
2 Petitioner then filed a petition for review in the California Supreme Court, which was denied
3 on April 28, 2010. (Ans. Ex. 7.) Petitioner proceeded to seek habeas relief in all three levels
4 of the California courts. The superior court denied the petition on August 26, 2010, and the
5 appellate and supreme courts subsequently issued summary denials of the petitions presented
6 to them. (Ans. Exs. 8-10.)

On December 29, 2011, Petitioner, proceeding pro se, filed the instant habeas petition in federal court setting forth five claims for relief: (1) the trial court violated his Sixth and Fourteenth Amendment rights by denying a motion for a mistrial after a potential juror made prejudicial statements tainting the impartiality of the eventual jury; (2) the admission of identification testimony by four witnesses violated his right to due process and the prosecutor committed misconduct by using such testimony; (3) he received ineffective assistance of trial and appellate counsel; (4) the prosecutor suppressed evidence in violation of Petitioner's right to due process; and (5) the trial court's failure to excuse eight biased jurors violated his constitutional rights. Respondent was ordered to show cause why the petition should not be granted. Respondent filed an Answer denying the claims on their merits, with a supporting memorandum and exhibits. Petitioner filed a Traverse in response. Thereafter, counsel appeared on behalf of Petitioner.

On July 8, 2013, the parties notified the Court that Petitioner had been released from custody pursuant to the "compassionate release" provisions of California Penal Code Section 1170(e) because he was suffering from a terminal illness.

## II. Facts

Petitioner was convicted of stealing laptop computers from various corporate offices in silicone valley in eight different incidents between October 26, 2006, and February 15, 2007.[1] Thomas Haile, an employee of Seagate, testified that on October 26, 2007, he saw a person matching Petitioner's description take a laptop from an employee's desk and leave the

---

[1] The jury acquitted Petitioner on a ninth robbery count stemming from a theft of laptops during this time period from another office in the area.

2

building; two laptops were stolen from Seagate that day. (Ans. Ex. 2 at 143-67.) Valeria Verra, a SanDisk employee, testified that she saw Petitioner in her building on November 7, 2006, and surveillance cameras showed the same person walk towards the place where three laptops were stolen and leave the offices with a full, heavy backpack. (*Id.* at 248-97.) Another SanDisk employee, Elizabeth Dauda, testified that she saw Petitioner put a backpack in a Land Rover or Land Cruiser that same day at the SanDisk offices. (*Id.* at 645-48.) A Hitachi employee, Victor Nemechek, testified that on December 13, 2006, he saw a person with a full backpack leaving one of the cubicles where one of three laptops that were stolen that day had been. (*Id.* at 349-56.) A BAE Systems employee testified that he saw a person who looked like Petitioner in their offices on December 13, 2006, the day that two laptops were stolen. (*Id.* at 417-38.)

Surveillance photos from at KLA Tencor offices on February 5 and 9, 2007, both days on which laptops were stolen, showed a person similar to the suspect in one of the earlier incidents entering and leaving the building; photos from February 5 showed him leaving with a full backpack. (*Id.* at 478-538.) A KLA employee, Deepa Rayadurg, testified that she saw the man in the photos on February 9, and at trial she identified him as Petitioner. (*Id.* at 567-636.) Rayadurg confronted him, but he ran away. (*Id.*) Her co-worker chased him to the parking lot, where he got into a car, but her co-worker and security cameras caught the license plate number. (*Id.*) The registered owner of the car was Petitioner's wife. (*Id.* at 782.) Laptops were also stolen from eBay offices on February 9 and 15, 2007. (*Id.* at 660-708.) Security footage showed a man entering the building on those days and leaving with a laptop bag and a full backpack. (*Id.* at 675-764.)

The surveillance photos and videos from these incidents showed that the same individual was involved. (*Id.* at 783-87.) When the police went to Petitioner's home, Petitioner's wife was driving the Land Rover that had been at the scene of one and possibly two of the thefts. Petitioner was also there on a motorcycle, but he fled and eventually crashed into another car; in his possession was a backpack with a stolen laptop inside. (*Id.* at 793-804.)

Evidence that Petitioner had been convicted of stealing laptop computers from other corporate offices in various incidents between 2001 and 2004 using similar methods was admitted under California Evidence Code § 1101(b) to show intent, identity, and common scheme or plan.  (*Id.* at 1040-55.)

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Rose v. Hodges*, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 384–86 (2000), while the second prong applies to decisions based on factual determinations.  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  *Williams*, 529 U.S. at 405–06.  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence.  "A federal court may not overrule a state court for

4

simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340. Where constitutional error is found, habeas relief is warranted only if the error at issue had a "substantial and injurious effect on the verdict." *Penry v. Johnson*, 532 U.S. 782, 796 (2001) (citation omitted).

In determining whether the state court's decision is contrary to or involved an unreasonable application of clearly established federal law, or is based on an unreasonable determination of the facts, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claims in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Here, the California Court of Appeal was the highest court to address, in a reasoned opinion, Petitioner's first claim. (Ans. Ex. 6.) Petitioner's second through fifth claims were denied on state habeas review, and the only explained opinion denying those claims is the brief opinion of the superior court. (Ans. Exs. 8-10.)

## DISCUSSION

### 1. Jury Contamination

Petitioner claims that comments by a prospective juror during jury selection in the presence of the eventual jury, the parties and the trial court tainted the jury and violated his constitutional rights to due process, confrontation and a fair and impartial jury.

Near the end of the jury selection process, after the jury had been sworn and alternate jurors were being selected, Prospective Juror 55 made the following statement:

> Good afternoon. I'm chairman and CEO of a software company. Married. My spouse is an executive assistant. Three grown children. I've been living in San Jose for the past ten years. [¶] The software we do is directly applicable to law enforcement work. I work regularly with the Justice Department, National Security Agency, Homeland Security, FBI relative to finding bad guys. And it's highly classified. That's about as much as I can say about it. One of our board

5

members is, in fact, was formally [*sic* ] number 2 in the New York City police department headed up to Virginia State Police and until recently was the head of the police department in Virginia. I work quite closely with him on a regular basis. [¶] I was on a criminal case five years ago. We reached a verdict. Our family has been victimized with a house burglarized in early 2007. *We had exactly the same crime happen at our office that this case is about and, unfortunately, Mr. Grant looks an awful lot like the person who I would have identified as having committed that crime in our office.*

(Ans. Ex. 6 at 2-3 (emphasis added by California Court of Appeal).)  Prospective Juror 55 then stated that he had seen the thief and spoken to him.  (*Id.* at 3.)  The trial court excused Prospective Juror 55 without objection from either side.  (*Id.*)

The next day, defense counsel moved for a mistrial on the ground that the remarks "tainted the entire jury panel." (*Id.* at 4.)  The trial court denied the motion with the following explanation:

> I will acknowledge that it was an inappropriate statement to make. I believe we were towards the end. I don't know-I really can't say what type of impact it had on the other jurors, but it was a brief statement. I kind of jumped in there right after that and I indicated what I hear you're saying is you can't be fair and he said yes and he was gone.

(*Id.*)

Next, the trial court instructed the jury: "You must decide what the facts are in this case. You must use only the evidence that was presented in the courtroom. Evidence is the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence." (*Id.* at 4-5.)  With the agreement of defense counsel, the trial court also gave the jury the following admonishment specific to Prospective Juror 55's statement as follows:

> Now, folks, one more thing before I turn it over to the attorneys. There was an incident that occurred yesterday during the jury selection toward the end of the day, there was a gentleman in the front row who indicated that he was the C.E.O. of a software company. That their company had suffered a burglary similar to what was described yesterday. And then he made a very unfortunate and inappropriate comment to the affect [*sic* ] that if he was to identify the perpetrator it looked like the defendant in this case. Again, inappropriate. Completely unfounded as far as we know. I don't want you to-if you didn't hear it, I'm sorry I

6

> brought it up. But I think it's important. [¶] Two things about that. Number one, to our knowledge there's actually no basis in fact to that allegation. But most important for you as jurors, it's not evidence. It's not something that you should consider. In fact, I'm going to order you to completely disregard it. Not discuss it. And not consider it for any purpose because it wasn't evidence in this case. [¶] Does anybody have a question about that or a problem with that? Okay I would appreciate that.

(*Id.* at 5.)  At the conclusion of the evidence, the trial court again reiterated the instructions above that the jury was only to only to use the evidence presented at trial to decide what the facts are in the case.  (*Id.* at 5-6.)

The California Court of Appeal found that the trial court did not err in denying the motion for a mistrial because Prospective Juror 55's statement was not "incurably prejudicial:"

> The circumstances surrounding Prospective Juror 55's comments do not reflect that the jury's exposure to those comments was so exceptional that it could not be cured by admonition or that defendant's prospects of receiving a fair trial had been irreparably damaged. First, by instructing the jury that Prospective Juror 55's comments were "[c]ompletely unfounded" and had "no basis in fact," the trial court characterized the comments as false. Since it is reasonable to presume that a jury will honor the word of a court over off-hand remarks by a prospective juror, this instruction substantially limited the impact of the comments. Second, the trial court ordered the jury to "completely disregard" the comments and to "not consider [the comments] for any purpose," and it confirmed that the jury had no "problem" in obeying this order.  This order and the confirmation that it would be obeyed provided the requisite assurance that the comments would not play any role in the jury's deliberations. Third, while exposure to Prospective Juror 55's comments posed a potential risk of prejudice in the abstract, those comments had to be considered in light of the fact that the trial court had already approved the prosecution's plan to introduce evidence of defendant's prior similar offenses at trial to show identity. Any potential prejudice from the jury's exposure to Prospective Juror 55's comments would be reduced to insignificance in the shadow of this much more powerful evidence of defendant's prior criminality that would be legitimately introduced at trial. Under these circumstances, the trial court could reasonably conclude that Prospective Juror 55's comments were not incurably prejudicial.

(*Id.* at 10.)

7

Petitioner argues that the Court of Appeal opinion is contrary to and an unreasonable application of federal law under AEDPA because the type of error -- the jury's exposure to improper, extrinsic information, such as the statement by Prospective Juror 55 -- is a structural error that requires relief regardless of whether or not there was prejudice. Petitioner is wrong. As discussed above, relief under AEDPA requires "clearly established" federal law in the form of United States Supreme Court precedent. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 405–06. There is no Supreme Court precedent holding that a trial before biased jurors presents structural error, or that the trial court's failure to hold a hearing to investigate potential juror bias constitutes structural error. *Sims v. Rowland*, 414 F.3d 1148, 1153 (9th Cir. 2005). To the contrary, a jury's exposure to extrinsic information is treated as a trial error subject to prejudice analysis on federal habeas review. *See Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000); *see Jeffries v. Blodgett*, 5 F.3d 1180, 1190 (9th Cir. 1993). A federal petitioner is entitled to habeas relief based on the jury's exposure to the extrinsic information only if it can be established that it had a "substantial and injurious effect or influence in determining the jury's verdict." *Sassounian*, 230 F.3d at 1108 (applying *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)); *Jeffries*, 5 F.3d at 1190 (same).

The authority Petitioner relies upon is not to the contrary. He relies on three cases that address different kinds of error. *See Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993) (failing to adhere to beyond a reasonable doubt standard is structural error); *Gomez v. United States*, 490 U.S. at 876 (1989) (harmless error analysis does not apply where federal Magistrate Judge's exceeding its jurisdiction by conducting jury selection); *Gray v. Mississippi*, 481 U.S. 648, 668 (1987) (no harmless error analysis where trial court erroneously excused qualified juror cause based on personal opposition to death penalty). He cites to a dissenting opinion in *Bell v. Quintero*, 544 U.S. 936, 940 (2005), which in any event does not state that juror exposure to extrinsic information is structural error. And he relies on a Ninth Circuit decision which stated that it "need not decide" whether the error was structural because it was not

1   harmless. *See Mach v. Stewart*, 137 F.3d 630, 634 (9th Cir. 1998).[2] Accordingly, the Court
2   rejects Petitioner's argument that the state court's failure to treat the jury's exposure to
3   Prospective Juror 55's statement as structural error was contrary to or an unreasonable
4   application of "clearly established" federal law under AEDPA.

5   For the same reasons the California Court of Appeal found insufficient prejudice, this
6   Court finds that Prospective Juror 55's statement did not have a substantial and injurious
7   effect on the verdict under *Brecht*. *See Sassounian*, 230 F.3d at 1108; *Jeffries*, 5 F.3d at 1190.
8   First, the statement was effectively neutralized by the trial court strong and unequivocal
9   admonishment to the jury that the statement was "completely unfounded," had "no basis in
10  fact" and did not constitute evidence. The jury is presumed to follow this instruction, as well
11  as the instructions before and after trial that it could only consider evidence in reaching its
12  verdict. *See Manduso v. Olivarez*, 292 F.3d 939, 952 (9th Cir. 2002) (curative instruction my
13  render harmless jury's inadvertent exposure to extrinsic information). Secondly, the jury was
14  already properly exposed to Petitioner's prior thefts of laptops, which greatly diminished the
15  significance and impact of Prospective Juror 55's statement.[3] For these reasons, there is
16  insufficient prejudice under the *Brecht* standard to warrant federal habeas relief based upon
17  the jury's exposure to Prospective Juror 55's statement.

### 2. Admission of Identification Testimony

19  Petitioner claims that admission of in-court identification testimony by four witnesses
20  violated his right to due process and that the prosecutor committed misconduct by using such
21  testimony. The in-court identifications were by witnesses Deepa Rayadurg, Jaikaran Shukla,
22  Elizabeth Dauda, and Valerie Vierra, employees three of the businesses where the thefts

---

[2] The California Court of Appeal also persuasively distinguished *Mach* from this case on its facts. (Ans. Ex. 6 at 11.)

[3] In his Traverse, Petitioner claims for the first time that admission of evidence of the prior convictions violated his right to due process. New claims may not be raised in a Traverse. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). In any event, habeas relief is not available on such a claim under AEDPA. *See Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (no Supreme Court precedent that admission of irrelevant or overtly prejudicial evidence violates due process violation so as to warrant federal habeas relief under AEDPA).

9

1  occurred. Petitioner argues that the evidence should not have been admitted because there
2  was no lineup or identification procedure conducted prior to trial, and because 13-16 months
3  had passed since the thefts took place. He also cites discrepancies between the witnesses'
4  descriptions of the thief, the suspect in the surveillance photos and videos, and Petitioner.

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999)*; Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir. 1986). The in-court identifications were certainly relevant to the issue of who committed the thefts. Petitioner cites no authority, and this Court is aware of none, that due process or any other constitutional guarantee prohibits the admission of in-court identification testimony if there has been no pre-trial identification procedure, or if 13-16 months have elapsed since the crime occurred. Defense counsel was free to, and did, raise these and any other factors that called into question the reliability of the in-court identifications when cross-examining the witnesses and arguing the case to the jury. Petitioner has not shown that the admission of the in-court identification testimony violates his right to due process.[4]

Petitioner argues that the prosecutor, Angela Alvarado, committed misconduct in violation of his right to due process by eliciting the in-court identification testimony. Petitioner cites the prosecutor's opposition to a pre-trial defense motion that witnesses view physical lineups before trial. In that opposition, the prosecutor stated that the witnesses would not provide in-court identifications. (Pet. Ex. B.) Petitioner claims that the prosecutor breached this "contractual obligation" under *Santobello v. New York*, 404 U.S. 257 (1971), when she elicited the identification testimony at trial. *Santobello* does not support Petitioner's claim. *Santobello* concerns prosecutorial promises in a plea agreement, and provides that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so

---

[4] In his Traverse, Petitioner argues that photographic lineups were unduly suggestive. This argument is not in the Petition. Petitioner may not make new claims in a Traverse. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). Petitioner also does not explain where or when the photo lineup took place, when or if they were used at trial, or which witness(es) participated in them.

1 that it can be said to be a part of the inducement or consideration, such promise must be
2 fulfilled." *Id.* at 262.  Petitioner cites no authority, let alone "clearly established" Supreme
3 Court precedent that the prosecutor's statements in the opposition created a "contract" with
4 Petitioner or gave him a right protected by due process to avoid in-court identifications by the
5 witnesses.  Accordingly, Petitioner has not shown that the state courts' denial of this claim
6 was contrary to or an unreasonable application of clearly established federal law so as to
7 warrant federal habeas relief.[5]

### 3. Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance of trial and appellate counsel.  A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).   In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Strickland*, 466 U.S. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id*.

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland*.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  First, the petitioner must show that counsel's performance was objectively unreasonable, which in the appellate context requires the petitioner to demonstrate that counsel acted

---

[5] Simply because there is no clearly established Supreme Court authority holding that the prosecutor's conduct renders the trial fundamentally unfair, this does not make the prosecutor's conduct acceptable.

unreasonably in failing to discover and brief a merit-worthy issue. *Id.* Second, the petitioner must show prejudice, which in this context means that the petitioner must demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal. *Id.* at 285-86.

Petitioner complains that his first trial attorney, Gregory Martin, failed to file a motion to suppress. "To show prejudice under *Strickland* from the failure to file a motion, [petitioner] must show (1) that had counsel filed the motion it is reasonable that the trial court would have granted it as meritorious; and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him." *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999). Petitioner does not identify or explain on what grounds counsel could have filed a motion to suppress or what evidence he should have sought to suppress. He certainly does not show that there was any reasonable probability either that such a motion would have succeeded or that the success of the motion would have changed the outcome of the trial. In his Traverse he argues that Martin should have moved to suppress the in-court identifications when they were given, but Martin was no longer trial counsel at that time.

Petitioner also faults Martin for not filing the motion for a physical line-up sooner, before the preliminary hearing. To succeed on such a motion, a defendant must show that there is a reasonable likelihood of mistaken identity that the lineup would resolve. *See Evans v. Superior Court*, 11 Cal. 3d 617, 625 (1974). Petitioner has not shown that there was a reasonable likelihood of mistaken identification in this case given the surveillance photos and videos depicting him at the scene of the crimes. More importantly, Petitioner has not shown or attempted to show that the witnesses would have been unlikely to identify him at the physical line-ups or that such line-ups would not have simply produced more unfavorable evidence identifying him as the man the witnesses had seen. As a result, Petitioner has not shown that even if the motion had been granted, there is a reasonable probability that the outcome of the trial would have changed. Accordingly, Petitioner has not shown that Martin's performance was prejudicial under *Strickland*.

Petitioner complains that his second trial, Dennis Dawson, who took over for Martin on the first day of trial, failed to object to the admission of the in-court identification of Petitioner by four witnesses. Petitioner asserts that counsel should have objected because of the statement by the prosecutor, Angela Alvarado, in a pretrial filing that she would not elicit in-court identification testimony from witnesses, including two of the witnesses who identified Petitioner in court. Petitioner has not shown a reasonable likelihood that the objection would succeed. The testimony was indisputably admissible. *See Hebner v. McGrath*, 543 F.3d 1133, 1137 (9th Cir. 2008) (counsel not ineffective for failing to object to admission of admissible testimony). While the trial court presumably would have discretion to exclude the testimony because of the prosecutor's statements, Petitioner has not shown why the trial court would have excluded admissible testimony rather than take some other step such as referred the prosecutor for discipline. In any event, even if the objection was successful, there is no reasonable probability of a different outcome. The objection would not have excluded the other two in-court identifications of Petitioner, which, along with the surveillance footage showing Petitioner at the scene of the crimes and the ample modus operandi evidence would have likely led to a conviction in any event. (*See also* Pet. Ex. G (discussion by appellate counsel of surveillance evidence).) Thus, Petitioner has not shown that Dawson's failure to object was prejudicial under *Strickland*.

Lastly, Petitioner complains that his appellate attorney, Candace Hale, failed to raise the above claims on appeal. Appellate counsel will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason--because he declined to raise a weak issue. *See Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Petitioner complains that Hale failed to raise on appeal the lack of physical line-ups, the admission of in-court identification testimony, the prosecutor's misconduct, and his trial attorneys' performance with respect to these issues. These would have weak claims without a reasonable chance of success because of the uncertainty about the results of the physical lineups, the admissibility of the in-court identifications, and the lack of prejudice from trial

counsels' performance.  Thus, Hale's failure to bring these claims in appeal was neither deficient performance nor prejudicial.

Petitioner also claims that Hale did not investigate his claim that he was in Las Vegas when the ninth charged robbery took place (at eBay on February 15, 2007).  Petitioner's exhibits show that Hale did in fact investigate the Las Vegas trip.  (Pet. Ex. G.)  She concluded that the alibi was not a worthy issue to pursue on appeal because she learned from Dawson that the trip receipts did not show Petitioner's absence during the last robbery, and in any event the surveillance footage from that robbery and the prior robbery at eBay clearly showed Petitioner there on the days in question.  (*Id*.)  Petitioner does not identify any additional information that she could have or should have pursued that would have made his purported alibi worth pursuing on appeal after her investigation showed that the alibi was unsubstantiated.  Petitioner also complains that she did not investigate alleged perjury by a witness at his 2004 trial and an allegedly false police report by another witness at that trial.  (Pet. Exs. H., I.)  Petitioner has not identified what claims Hale could have brought in the appeal of his present convictions based on these matters.  He has also not explained why such claims had a reasonable chance of success given that it concerned only certain of the prior convictions used to show Petitioner's common scheme, identity and intent.  Accordingly, Petitioner has failed to show that Hale violated his right to effective assistance of counsel on appeal by failing to investigate his alibi and two witnesses at his 2004 trial.

The state courts' denial of Petitioner's claim that he received ineffective assistance of counsel at trial and on appeal was neither contrary to nor an unreasonable application of federal law, and Petitioner is not entitled to habeas relief on these claims.

**4.  Suppression of Evidence**

Petitioner claims that the prosecutor violated his constitutional rights by suppressing favorable evidence concerning two witnesses in his 2004 trial.  He states that his trial attorney gave the prosecutor "Discovery" about Inspector J. Lage from the Hayward Police Department writing a false police report, and about Kathleen Smith, a Safeway employee, committing perjury.  According to Petitioner, Smith committed perjury in 2004 when she said

14

1  that she had not seen a photographic lineup of the suspect, but in the present case, when
2  testifying about the 2004 robbery, she stated that she had seen a photographic lineup.

To succeed on a claim that the prosecutor suppressed evidence in violation due process, petitioner must show: (1) that the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) that it was suppressed by the prosecution, either willfully or inadvertently; and (3) that it was material (or, put differently, that prejudice ensued). *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Here, Petitioner alleges that the defense gave evidence to the prosecutor. The prosecutor cannot withhold or suppress evidence supplied by the defense. The prosecutor also did not have any constitutional obligation to investigate the evidence supplied by Petitioner. *See Rhoades v. Henry (Baldwin)*, 638 F.3d 1027, 1038-39 (9th Cir. 2011) (no disclosure violation defendant was "aware of the essential facts enabling him to take advantage of any exculpatory evidence"); *United States v. Bond*, 552 F.3d 1092, 1095-96 (9th Cir. 2009) (where government discloses all information necessary for defense to discover alleged *Brady* material on its own, government is not guilty of suppressing evidence). Petitioner has not shown a due process violation occurred. Accordingly, and the state courts' rejection of this claim was neither contrary to nor an unreasonable application of federal law, and habeas relief is not warranted on this claim.

### 5. **Biased Jurors**

Petitioner claims that the trial court's failure to strike eight jurors on the grounds of bias violated his right to due process. He claims that these jurors were biased because four of them had been victims of computer theft, two others had been victims of other thefts, one knew someone who had been killed by a burglar, and one said that a person is likely to commit a crime if they have committed a crime in the past.

The Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. *Id.* Due process only means a jury capable

15

1    and willing to decide the case solely on the evidence before it and a trial judge ever watchful
2    to prevent prejudicial occurrences and to determine the effect of such occurrences when they
3    happen. *Id.* Petitioner does not show that the jurors' prior experiences or beliefs made them
4    incapable or unwilling to decide the case on the evidence and law presented to them. A victim
5    of theft or someone who knew a crime victim could certainly put that aside for purposes of
6    deliberating over a different case. Similarly, Juror No. 34's belief that a prior criminal was
7    more likely to offend again does not mean that he would necessarily seek to convict a person
8    with a criminal history. These facts do not, on their own, show that the jury was incapable or
9    unwilling to decide the case before it so as to violate his Sixth Amendment rights.

10    Furthermore, Petitioner cannot show that he was prejudiced by any bias from these
11   jurors or the trial court's failure to hold a hearing on the issue. *See Sims v. Rowland*, 414 F.3d
12   1148, 1153 (9th Cir. 2005) (juror bias or failure of trial court to hold hearing to investigate
13   matter are subject to harmless error analysis because no Supreme Court precedent holding that
14   either constitute structural error). The harmless error standard on federal habeas review is
15   whether the error had a "substantial and injurious effect or influence" on the jury's
16   determination of guilty. *See Brecht v Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). If the
17   jury's verdict was based on its purported bias, they would have had no reason not to convict
18   him on all counts. But the jury acquitted Petitioner on one of the counts, which strongly
19   indicates that its verdict was not based on bias but on a consideration of the evidence and the
20   law. In addition, the evidence of guilt was very strong. Petitioner was caught on surveillance
21   video and photographs at the scene of the crimes, there was eyewitness testimony identifying
22   him in several of the incidents, the charged offenses followed a similar modus operandi to
23   each other and to prior crimes by Petitioner, his wife's car was at the getaway car at one of the
24   incidents, and Petitioner fled the police in possession of a stolen laptop. Under these
25   circumstances, the jurors' prior experiences and beliefs did not have a substantial and
26   injurious effect or influence on the outcome of the case.

27    Petitioner also claims that the Equal Protection Clause was violated because there was
28   only one African-American in his jury pool, and she was not on his jury. *See Batson v.*

*Kentucky*, 476 U.S. 79, 89 (1986) (the Equal Protection Clause forbids the challenging of potential jurors solely on account of their race).  Petitioner may not raise a *Batson* claim in federal habeas review, however, because he failed to object to the venire or to the selection of jurors at trial.  *See Haney v. Adams*, 641 F.3d 1168, 1169, 1173 (9th Cir. 2011) (joining sister circuits in concluding that denial of *Batson* claim by state court was not contrary to or unreasonable application of federal law under AEDPA where defendant failed to make timely objection at trial).

For the reasons described above, the state court's denial of Petitioner's claim of jury bias and an equal protection violation was neither contrary to nor an unreasonable application of federal law.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Petition for Writ of Habeas Corpus.  A certificate of appealability will not issue.  Reasonable jurists would not find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability from the Court of Appeals.  The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED:     February 19, 2015

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**